**In re MONTRACHET S.A.**

No. 89–1114.

United States Court of Appeals,
Federal Circuit.

June 30, 1989.

John J. McGlew, McGlew & Tuttle, P.C., New York City, argued for appellant.

Nancy Slutter, Associate Sol., Office of the Sol., Arlington, Va., argued for appel-

lee. With her on the brief was Fred E. McKelvey, Sol.

Before MARKEY, Chief Judge, SKELTON, Senior Circuit Judge, and NEWMAN, Circuit Judge.

PAULINE NEWMAN, Circuit Judge.

Appellant Montrachet S.A., a French company, appeals the decision of the Patent and Trademark Office (PTO) Trademark Trial and Appeal Board (Board) denying registration of MONTRACHET as a trademark for cheese and cheese spreads, Application Serial No. 471,281, filed March 20, 1984. We reverse.

### The Board's Rejection

■ Registration was refused under Section 2(e)(1) of the Lanham Trademark Act, 15 U.S.C. § 1052(e)(1), on the ground that MONTRACHET is "merely descriptive of the goods", a rejection that the Board explains as "that is, 'MONTRACHET' is the apt descriptive name for a particular type of goat cheese". By brief and at oral argument the Commissioner pressed the position that MONTRACHET is simply the name of a kind of cheese, using the analogy that "feta" or "cheddar" is the name of a kind of cheese. The Commissioner did not distinguish between a descriptive term that is nevertheless capable of serving as a trademark, subject to the provisions of 15 U.S.C. § 1052(f), and a common or generic name that is not capable of trademark use.

### Discussion

It is not in dispute that the term MONTRACHET originated as a designation of the source of appellant's goat cheese. The Commissioner does not assert that MONTRACHET is descriptive as a matter of the common meaning of the word, in the sense that, for example, "gasbadge" was held to be descriptive in *In re Abcor Dev. Corp.*, 588 F.2d 811, 200 USPQ 215 (CCPA 1978). The issue thus is not whether MONTRACHET is capable of serving as a trademark or is capable of acquiring trademark significance, for the trademark capability of the term MONTRACHET is unchallenged.

The issue is whether MONTRACHET has lost its original trademark significance; that is, whether MONTRACHET is now the common descriptive or generic name for applicant's cheese. If through usage MONTRACHET has become the common or generic name of the cheese, and is no longer an indication of source, it would no longer be entitled to trademark status, for generic names are incapable of indicating source. *In re Northland Aluminum Products, Inc.*, 777 F.2d 1556, 1559, 227 USPQ 961, 962–63 (Fed.Cir.1985); *Dan Robbins & Assocs., Inc. v. Questor Corp.*, 599 F.2d 1009, 1014, 202 USPQ 100, 105 (CCPA 1979).

Whether a term is entitled to trademark status turns on how the mark is understood by the purchasing public. *In re Abcor*, 588 F.2d at 813, 200 USPQ at 218. There is no uniform test or formula to be applied in determining whether a term is or has become a common or generic name. *Id.* at 813, 200 USPQ at 217–18. Each case must be decided according to its facts. Compare the Board's holding in *In re Bel Paese Sales Co.*, 1 USPQ2d 1233, 1235 (TTAB 1986) (magazine and newspaper excerpts do not sufficiently and clearly show that DOLCELATTE is the generic name of a type of cheese) with *In re Cooperativa Produttori Latte E Fontina Valle D'Acosta*, 230 USPQ 131, 133 (TTAB 1986) (newspaper articles and dictionary definitions show that FONTINA is the generic name of a type of cheese). Although in *In re General Foods Corp.*, 231 USPQ 237, 239 (TTAB 1986), the Board denied registration of PETIT MONTRACHET ("petit" disclaimed) on the basis that MONTRACHET is a merely descriptive term for cheese, in the case before us the Board declined to be bound by this decision, explaining that the facts are different because the applicant herein is the originator of the mark and alleges use in United States commerce for thirty-three years.

It is undisputed that appellant is the originator and source of the MONTRACHET brand of goat cheese ("chevre" in French), and that the cheese is produced in France and exported to the United States.

Both appellant and the PTO trademark attorney provided examples of usages of the term MONTRACHET. A large number of publications that are styled dictionaries or encyclopedias of cheese, in English and in French, list MONTRACHET as a brand of goat cheese. Jones, *The World of Cheese*, 1976, shows a picture of appellant's log-shaped cheese with the caption "MONTRACHET DUSTED WITH CINDERS"; the label in the photo is identical to the MONTRACHET label submitted with the application for registration. The trademark attorney also cited, and appellant emphasizes, the *Guide Du Fromage* and a Larousse *Dictionnaire des Fromages*, both of which refer to MONTRACHET as the "marque" of appellant's cheese. The Commissioner does not dispute the meaning of "marque" as "trademark".

The heavy weight of the examples in the record shows MONTRACHET in classical trademark usage. The Board cited several examples as supporting its conclusion of generic usage, typified by an article in the New York Times of November 23, 1983, recommending that a successful dinner party include "Cheeses (Montrachet, Appenzeller)"; a statement in The New York Times of September 30, 1984 that "[a]nother widely sold chevre is montrachet"; an article in The Christian Science Monitor of June 19, 1985 stating "[f]or those who like an import label on their goat cheeses, here are some of the more popular types. From France: Montrachet"; a recipe in The Washington Post of April 12, 1981 calling for "¼ pound goat cheese (they use Montrachet black ash goat cheese)"; and a reference in The Christian Science Monitor of June 19, 1985 to "a Montrachet-style log" of cheese. The Commissioner also relies on various listings of cheeses; for example, there is a list of ninety-two "varieties" of goat cheese, including "Montrachet" and "Fromage de Montrachet".

The uses on which the Commissioner relies are not inconsistent with the trademark status of MONTRACHET. They do not establish that the mark is viewed by the public as a generic name. That a particular source makes a goat cheese with recognizable characteristics does not convert the

designation of source to a common or generic name. To the contrary, it is the trademark function to so identify a product that the consumer is assured of the quality and characteristics that it has come to associate with a particular source of that product.

Congress has reinforced, by statutory enactment, that it is not destructive of the trademark function to identify a product by the name coined by its purveyor. "A registered mark shall not be deemed to be the common descriptive name of goods or services solely because such mark is also used as a name of or to identify a unique product or service." 15 U.S.C. § 1064(c) (Supp. II 1984).

The burden was on the Patent and Trademark Office to show that the public perceives MONTRACHET to be a generic designation for a type of cheese, in order to deprive this brand name of its previously established trademark status. This burden was not met. The heavy weight of the evidence is contrary to the Board's finding that "Montrachet" is a common descriptive or generic name. The Board's holding is REVERSED.