**BASEL ACTION NETWORK, Plaintiff,**

v.

**INTERNATIONAL ASSOCIATION OF ELECTRONICS RECYCLERS, et al., Defendants.**

**Case No. C10–931RAJ.**

United States District Court,
W.D. Washington,
at Seattle.

June 7, 2011.

Aviva Kamm, Bradford J. Axel, Leslie C. Ruiter, Stokes Lawrence, Seattle, WA, for Plaintiff.

Jennifer Campbell, Virginia Rosalie Nicholson, Schwabe Williamson & Wyatt, Seattle, WA, Peter E. Heuser, Schwabe Williamson & Wyatt, Portland, OR, for Defendants.

## ORDER

RICHARD A. JONES, District Judge.

## I. INTRODUCTION

This matter comes before the court on Defendants' motion (Dkt. # 37) to dismiss this action for lack of subject matter jurisdiction or, alternatively, to dismiss it for failure to state a claim. Defendants requested oral argument, Plaintiff did not. The court finds oral argument unnecessary. For the reasons stated below, the court GRANTS in part and DENIES in part the motion to dismiss.

## II. BACKGROUND

Defendants, the Institute of Scrap Recycling Industries ("ISRI") and International Association of Electronics Recyclers ("IAER"), are before the court for the second time asking the court to dismiss the complaint of Plaintiff Basel Action Network ("Basel"). At issue is Defendants' use of the term "certified electronics recycler," a term for which it obtained a certification mark registration in 2003 from the United States Patent and Trademark Office ("PTO"). Basel seeks to have the registration canceled because it contends the term "certified electronics recycler" is generic.

On December 13, 2010, the court issued an order dismissing Basel's original complaint. The factual allegations in that complaint are in large part identical to the ones in the complaint now before the court. Basel and Defendants are not-for-profit organizations that certify entities that recycle electronic products. Basel grants qualified entities its "E-STEW-ARDS" certification, for which it obtained a certification mark registration from the PTO in 2009. Defendants grant qualified entities their "Certified Electronics Recycler" designation, for which they obtained a registration in 2003.[1] Although the record is sparse as to Defendants' actual use of the term "certified electronics recycler," it appears that they typically do not use the term on its own, but rather in conjunction with the term "R2/RIOS," a conglomeration of two certification standards. ¶¶ 28–29, 41, Ex. 10.[2] Thus, the certifica-

---

1. The PTO registered "CERTIFIED ELECTRONICS RECYCLER" on behalf of IAER. PTO Reg. No. 2,679,182 (issued Jan. 21, 2003). ISRI later acquired IAER and purports to own the registration. No one disputes that either ISRI or IAER owns the registration, thus the court refers to the registration as Defendants' joint property.
The court notes, moreover, that the PTO registered "CERTIFIED ELECTRONICS RECYCLER" on its supplemental register, meaning among other things that Defendants are entitled to none of the evidentiary presumptions that arise from registration on the PTO's principal register. Compare 15 U.S.C. § 1057(b) (stating evidentiary presumptions applicable to marks on principal register) with 15 U.S.C. § 1094 (declaring evidentiary presumptions of § 1057(b), among other statutes, inapplicable to marks on supplemental register).

2. The court uses bare "¶" symbols to cite Basel's amended complaint. Dkt. # 33.

tion that Defendants offer is perhaps better referred to as the "R2/RIOS Certified Electronics Recycler" mark.

Although both Basel and Defendants have their own distinctive certification marks, they both refer to the entities they certify as "certified electronics recyclers." In its initial complaint, Basel sought a declaratory judgment that its use of "certified electronics recycler" did not infringe any of Defendants' legal rights because the term was generic. The court held that Basel stated no Article III controversy over that claim, because there was no evidence that Basel faced any adverse consequences from the use of that term in conjunction with its certification program. Defendants have never threatened to enforce their purported rights in the term "certified electronics recycler" against Basel, and there was no evidence of any other disadvantage arising from Basel's use of the term.

Basel also sought an order canceling Defendants' registration for "CERTIFIED ELECTRONICS RECYCLER," invoking Section 37 of the Lanham Act. 15 U.S.C. § 1119. The court held that a claim for cancellation could not stand on its own, but instead required what the court labeled a "valid independent cause of action" for which cancellation is a remedy. Dkt. # 29 (Dec. 13, 2010 ord. at 14). The court granted Basel leave to amend to state such an action.

In its new complaint, Basel reasserts its cancellation claims, but also attempts to assert a cause of action for unfair competition in violation of Section 43(a) of the Lanham Act. 15 U.S.C. § 1125(a). There is

no question that Basel and Defendants are in competition. Defendants illustrate the competition in their one-page "Recycling Industry Operating Standard Scorecard." ¶¶ 41, Ex. 10 ("Scorecard"). It compares three different certification standards: the "R2" certification, Basel's E–Stewards certification, and Defendants' "R2/RIOS Certified Electronics Recycler" certification. Most of the scorecard is unremarkable for purposes of this action, but it concludes with the following comparison: Defendants tout themselves as the only certifier that "[p]rovides the trademarked designation of CERTIFIED ELECTRONICS RECYCLER®."

Basel offers various theories to explain why Defendants' use of "certified electronics recycler" is unfair competition. Defendants have moved to dismiss, arguing that Basel states no unfair competition claim. *See* Fed.R.Civ.P. 12(b)(6). Invoking the court's prior order, they ask the court to dismiss Basel's cancellation claims as well.[3]

## III. ANALYSIS

Defendants invoke Rule 12(b)(6), which permits a court to dismiss a complaint for failure to state a claim. It requires the court to assume the truth of all of the complaint's factual allegations and credit all reasonable inferences arising from its allegations. *Sanders v. Brown,* 504 F.3d 903, 910 (9th Cir.2007). The plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 568, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). If it does so, its complaint survives dismissal as long as there is "any set of

---

**3.** Defendants assert that the court previously dismissed Basel's standalone cancellation claims for lack of subject matter jurisdiction. They are mistaken. Dec. 13, 2010 ord. at 9 (explaining that the question of whether a party has statutory authorization to sue is not a question of subject matter jurisdiction), at 13–14 (contrasting those claims dismissed for lack of subject matter jurisdiction with those dismissed for lack of statutory authorization). As Basel asserts no other challenge to subject matter jurisdiction, this order does not further address the topic.

facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief. *Id.* at 563, 127 S.Ct. 1955; *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). The court typically cannot consider evidence or allegations beyond the four corners of the complaint, although it may rely on a document to which the complaint refers if the document is central to the party's claims or defenses and its authenticity is not in question. *Marder v. Lopez,* 450 F.3d 445, 448 (9th Cir.2006). The court may also consider evidence subject to judicial notice. *United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir.2003).

## A. Generic Terms and the Lanham Act

 Basel has plausibly alleged that "certified electronics recycler" is generic when applied to a certification program for an electronics recycler. Defendants do not argue to the contrary, nor could they. Basel's complaint contains allegations that it, other organizations that certify electronics recyclers, electronics recyclers themselves, and the media use the term "certified electronics recycler" not to refer to Defendants' certification standard, but to refer generally to an electronics recycler that is certified. ¶¶ 33–38, Exs. 4–9. When a term identifies an "entire class of products" rather than a specific product, it incapable of serving as a trademark, and is instead a generic term. *Kendall–Jackson Winery, Ltd. v. E. & J. Gallo Winery,* 150 F.3d 1042, 1047 n. 8 (9th Cir.1998); *see also Self–Realization Fellowship Church v. Ananda Church of Self–Realization,* 59 F.3d 902, 909 (9th Cir.1995) ("[T]he terms 'generic' and 'trademark' are mutually exclusive.") (quoting McCarthy, McCarthy on Trademarks and Unfair Competition § 12.01[1], at 12–3 (3d ed., Release No. 3,

1994)). A trademark answers the questions "who are you?", "where do you come from?", and "who vouches for you?" *Official Airline Guides, Inc. v. Goss,* 6 F.3d 1385, 1391 (9th Cir.1993) (citing McCarthy, Trademarks and Unfair Competition § 12.01 (3d ed.1992)). A generic term, however, answers only the question "what are you?" *Id.* To avoid being generic and serve as a valid trademark, a term's "primary significance" must be to identify not the product itself, but the source of the product. *Kellogg Co. v. Nat'l Biscuit Co.,* 305 U.S. 111, 118, 59 S.Ct. 109, 83 L.Ed. 73 (1938).

Certification marks serve a somewhat different purpose than trademarks. Whereas trademarks identify the source of a product; certification marks identify the source of a certification standard. In a sense, the certification mark is itself a product, because producers of goods or services seek to buy the right to use the certification mark as a signifier of the desirability of their products. Thus, when (to invent an example) Apple Computer pays Basel for the right to use its E–Stewards certification mark, it hopes to signify to customers that it complies with Basel's certification requirements. Basel, in turn, builds the value of its certification mark in the eyes of both Apple Computer and Apple's potential customers by promoting its certification standards in the hope of convincing customers that its certification is more desirable than its competitors'. In Defendants' Scorecard advertisement described above, Defendants attempt to convince customers (both recyclers and customers who care about the practices of recyclers) that their certification program is superior to Basel's.

 A certification term can be generic, just like a term purporting to be a trademark. A certification is generic when customers do not associate it with a particular certifying entity's standard, but rather an

entire class of certifying entities' standards. In this case, Basel contends that consumers associate "certified electronics recycler" not with Defendants, but with any entity (including Basel) that certifies the practices of electronics recyclers. Or, put another way, Basel contends that the answer to the question "what certifying organizations will allow an entity to become a certified electronics recycler?" is "Basel, ISRI/IAER, and every other entity that competes with them in the business of certifying electronics recyclers." *See Yellow Cab Co. v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 929 (9th Cir.2005) (explaining genericness inquiry). By contrast, the answer to the question "what certifying organizations will allow an entity to become an E–Stewards certified recycler?" is "Basel, and Basel only." *See id.* (distinguishing "yellow cab company" from "taxicab company").

The court elaborates on the genericness inquiry in this case because it is important in analyzing Basel's Lanham Act claims. Basel invokes Section 43(a) of the Lanham Act, which provides as follows:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. 15 U.S.C. § 1125(a). Speaking generally, subsection A encompasses claims based on acts that confuse customers as to the origin of goods or services, claims which the court will refer to as "confusion-of-origin claims." Subsection B encompasses claims of false advertising.

Accusations that a product name is generic typically arise when the purported holder of trademark rights in that name attempts to enforce its rights against a competitor who uses the same name but raises the defense that the name is generic. For example, in *Premier Nutrition, Inc. v. Organic Food Bar, Inc.*, 475 F.Supp.2d 995 (C.D.Cal.2007), a party claiming the exclusive right to use the term "organic food bar" to describe its products attempted (unsuccessfully) to obtain an injunction against a competitor using the same term. But, as the court discussed at length in its previous order, this is not a typical case. There is no evidence that Defendants ever intend to enforce their purported exclusive right to use the term "certified organic recycler."

Unable to assert from a defensive posture that "certified electronics recycler" is generic (or to recast that defense as a declaratory judgment claim), Basel now attempts to weave its allegations into an affirmative Lanham Act claim for unfair competition. Basel attempts to bring both confusion-of-origin claims as well as claims of false advertising.[4]

4. Defendants contend that "As a matter of law, a Plaintiff cannot assert a Section 43(a) unfair competition claim against a Defendant that owns the mark at issue." Defs.' Mot. at 5. The sole authority they cite for this proposi-

## B. Basel's Confusion–of–Origin Claims

Basel alleges that consumers have confused its certification program with Defendants'. For example, both BAN and ISRI were scheduled to make presentations at a September 2010 conference. The advance agenda for the conference labeled ISRI's morning presentation "How to become a Certified Electronics Recycler®." ¶ 46, Ex. 11. Basel's afternoon presentation on the same day was entitled "e-Stewards® Certification Workshop." *Id.* In the weeks leading up to the conference, Basel contends that several people contacted it believing that Basel would present the morning session. ¶ 47. Basel also alleges that consumers believe that its certification program is somehow affiliated with Defendants. ¶ 50.

In most circumstances, no one can assert a confusion-of-origin claim arising from a competitor's use of a generic term. This is implicit in the legal meaning of "generic," because generic terms are by definition those which designate a class of products rather than the source of a specific product. *See supra* Part III. A; *see also Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 936 (7th Cir.1986) ("Unlike a trademark, which identifies the source of a product, a generic term merely specifies the genus of which the particular product is the species."). Where confusion arises *solely* from the use of a generic term, courts have found that confusion to be beyond the scope of the Lanham Act. *E.g., Liquid Controls*, 802 F.2d at 940 (affirming summary judgment where court did "not believe that plaintiff ha[d] alleged

or shown evidence of confusion resulting from anything other than the similarity of [generic] names"); *Blinded Veterans Ass'n v. Blinded Am. Veterans Found.*, 872 F.2d 1035, 1043 (D.C.Cir.1989) ("If the name of one manufacturer's product is generic, a competitor's use of that name, without more, does not give rise to an unfair competition claim under section 43(a) of the Lanham Act.").

On the other hand, several courts have recognized an unfair competition claim where confusion arises from something more than the use of a generic term. For example, in *Genesee Brewing Co., Inc. v. Stroh Brewing Co.*, 124 F.3d 137, 146 (2d Cir.1997), the court found the term "honey brown" was a generic term when used to describe a class of beers. The court thus found that the plaintiff, who made "JW Dundee's Honey Brown Lager" had no trademark infringement claim against the defendant, who marketed "Red River Valley Honey Brown Ale." *Id.* at 149 (affirming denial of preliminary injunction). But the court noted that the defendant still could have engaged in unfair competition. *Id.* It considered the plaintiff's allegations that the defendant "market[ed] its beer in such a way as to lead consumers to believe they are getting [plaintiff]'s product," and had issued coupons designed to confuse customers as to the source of its beer. *Id.* at 150–51. Similarly, in one of the landmarks of the light/lite beer feud of the 1970s, the Seventh Circuit held that while the Miller Brewing Company's use of "Lite" to designate its light beer was ge-

---

tion is *Empresa Cubana del Tabaco v. Culbro Corp.*, 399 F.3d 462 (2d Cir.2005). First, Basel's plausible allegation that "certified electronics recycler" is generic means that the term is not a mark. Putting that aside, there is no evidence that Defendants "own" anything other than a registration for a certification mark in the term. Ownership of a registration on the supplemental register (*see supra*

n. 1) is not evidence of ownership of a mark. Second, the *Empresa Cubana* court held that a Cuban company could not own United States trademark rights because of the Cuban embargo. 399 F.3d at 476. Nothing in the case suggests that the American plaintiff, who owned a PTO registration for the mark in question, was immunized from suit by virtue of its "ownership" of the mark.

neric, Miller could nonetheless state a claim for unfair competition against another light beer producer if it could allege confusion arising from something other than the use of the term "light." *Miller Brewing Co. v. Jos. Schlitz Brewing Co.,* 605 F.2d 990, 997–98 (7th Cir.1979) (discussing confusion arising from coloring and styling of labels, "advertising calculated to lead to confusion," or "any cause except [defendant's] use of the word light in [its] product name"); *see also Murphy Door Bed Co. v. Interior Sleep Sys., Inc.,* 874 F.2d 95, 102 (2d Cir.1989) (holding that term "Murphy bed" was generic, but competitor engaged in unfair competition "by passing off products of his own manufacture as [plaintiff] Murphy Co.['s] products.").[5]

■ The court finds that Basel has not stated a confusion-of-origin claim based on anything more than Defendants' use of the generic term "certified electronics recycler." In Basel's example based on the September 2010 conference agenda, there is no suggestion that anything other than the term "certified electronics recycler" caused attendees to confuse ISRI's presentation for Basel's. Indeed, the agenda identified ISRI as the presenter for the morning session, and Basel as the presenter for the afternoon session. If attendees were confused, there is no plausible allegation that they were confused by something other than ISRI's use of the generic term "certified electronics recycler." Moreover, Basel's allegations about the September

2010 conference are the only ones specific enough to permit the court to even consider whether the confusion Basel complains of arises from the use of a generic term, as opposed to something more. Indeed, in Defendants' Scorecard advertisement, the only other specific example Basel provides, Defendants explicitly differentiate their "certified electronics recycler" certification from Basel's E–Stewards certification. Moreover, as the court has noted, it is unaware of any instance in which Defendants use the phrase "Certified Electronics Recycler" without identifying their R2/RIOS standard. For these reasons, the court holds that Basel has not stated a plausible Lanham Act confusion-of-origin claim.[6]

## C. Basel's False Advertising Claims

■ Basel fares better when it moves from confusion-of-origin claims to claims of false advertising. The best embodiment of this claim is in Defendants' Scorecard advertisement. Defendants tout to the public that only they, not Basel, and not any other certifier of electronics recyclers, can "[p]rovide[ ] the trademarked designation of "CERTIFIED ELECTRONICS RECYCLER®." As the court observed in its previous order, this assertion is literally true, because only a registration holder can use the registration symbol. Dec. 13, 2010 ord. at 11 (citing 15 U.S.C. § 1111). But a Lanham Act false advertising claim does not require proof that the challenged advertisement is literally false, only that it is misleading. *Southland Sod Farms v.*

5. The court is unaware of any Ninth Circuit authority explicitly recognizing an unfair competition claim involving a generic term. *But cf. Advertise.com, Inc. v. AOL Advertising, Inc.,* 616 F.3d 974, 982–83 (9th Cir.2010) (vacating injunction because "Advertise.com" was generic, but noting that no one had appealed injunction preventing use of "stylized marks or logos that [were] confusingly similar to [plaintiff]'s stylized marks"). The court assumes that the Ninth Circuit would do so,

however, in line with authority from other circuits.

6. The court's conclusion that Basel has not stated a confusion-of-origin claim means that it need not consider whether such a claim, based on something more than the use of a generic term, is a claim for which cancellation of a PTO registration for the generic term is an appropriate remedy.

*Stover Seed Co.*, 108 F.3d 1134, 1140 (9th Cir.1997) ("Even if an advertisement is not literally false, relief is available under Lanham Act § 43(a) if it can be shown that the advertisement has misled, confused, or deceived the consuming public").

If "certified electronics recycler" is a generic term, then Defendants' claim that only they provide the "trademarked designation of CERTIFIED ELECTRONICS RECYCLER®" is true, but incomplete. A more complete version of the truth might be as follows:

> Defendants have obtained a federal registration for the certification "certified electronics recycler." The term "certified electronics recycler," however, is generic, and any attempt to enforce our purported rights to use that term would not only fail, it would result in the cancellation of our registration. Until cancellation occurs, however, only we can legally append the registration symbol "®" to the term, unlike any of our competitors. Our competitors are free to use the term "certified electronics recycler," but they cannot append the registration symbol.

The court does not suggest that Defendants are obligated to reveal the complete truth in their advertisements.

■ Defendants are obligated, however, not to abbreviate the truth in a way that misleads consumers. It is not plausible that Defendants chose to tout the registration of their certification to advertise that they hold a meaningless registration for a generic term. The question thus arises: why are Defendants advertising their registration? It is plausible that Defendants intend to convey that the fact that they hold a PTO registration is significant in a way that matters to consumers. It is plausible, for example, that Defendants hope that the public will perceive their PTO registration as a favorable substantive judgment on their certification program.

It is plausible that Defendants hope that the public will perceive that their use of the term "certified electronics recycler" is somehow "official" or government-sanctioned. It is plausible that Defendants hope that consumers will perceive a tangible benefit to them arising from the mere fact that Defendants hold a registration. It is plausible that Defendants seek to send these implicit messages because it is difficult to imagine another reason that Defendants would tout the mere fact that they hold a registration for a generic term as a reason for consumers to prefer their certification standard over Basel's and others'.

If Defendants convey any of the messages listed above, they misrepresent the import of their PTO registration, and thus engage in false advertising in violation of the Lanham Act. Cancelling Defendants' registration would remedy the harm about which Basel complains. Were their registration canceled, Defendants would no longer be able to tout their registration in advertisements. Accordingly, the court concludes not only that Basel has stated a Lanham Act false advertising claim, but that this claim is a valid independent cause of action for which cancellation is a remedy, in accordance with the court's prior order.

## IV. CONCLUSION

For the reasons stated above, the court GRANTS Defendants' motion to dismiss in part and DENIES it in part. The court finds that Basel has not stated a Lanham Act confusion-of-origin claim, but has stated a Lanham Act false advertising claim. If Basel succeeds in proving that claim, cancellation of Defendants' registration for "CERTIFIED ELECTRONICS RECYCLER" is an available remedy.